* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hall and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Hall, with minor modifications.
 * * * * * * * * * * * EVIDENTIARY RULING
Upon the call of the case for hearing before the Deputy Commissioner, inquiry was made with regard to notice and service upon the Carrier, AIG, with regard to the claim and this hearing. The Industrial Commission file indicated that the hearing docket was mailed, certified with return receipt requested, to AIG and the green return card was returned to the Industrial Commission showing service being completed. Counsel for Defendant-Employer indicated that the motion to make AIG a party was served upon AIG. In addition, counsel for Defendant-Employer communicated to AIG after the Order was received making AIG a party. During one of those communications, the representative of AIG made inquiry with regard to the Social Security number of Plaintiff in order that they could identify the claim. Counsel for Defendant-Employer also communicated directly with AIG on Monday, August 22, 2005, by contacting the claims department and subsequently speaking with an adjuster for AIG. The response of the AIG representative was that the policy of insurance that was at issue had been cancelled and, therefore, they were not going to honor the claim. Additionally, an affidavit was submitted by Plaintiff's counsel wherein it was stated that a staff member for Plaintiff's attorney communicated directly with AIG, advised them of the hearing that was scheduled for August 26, 2005, in Greenville, and the AIG representative indicated that AIG would not be attending that hearing. Based upon the foregoing, it was the opinion of the Deputy Commissioner that timely and reasonable notice of the August 26, 2005 hearing was served upon and received by the Carrier AIG, who had previously been made a party to this claim by Order of the Industrial Commission filed March 21, 2005.
In a letter dated December 30, 2005, and stamped received by the Commission on January 3, 2006, Jan Pittman of Teague, Campbell, Dennis Gorham informed Deputy Commissioner Hall that she had been retained by AIG and requested the decision in this matter be delayed so that she could discuss the case with counsel of record, obtain additional file materials, and then submit a brief regarding the coverage issue. In an exchange of emails in which Ms. Stanley and Mr. Woodruff objected to Ms. Pittman's request and indicated that if it were allowed, they would need additional time to respond to any brief she submitted. Though Deputy Commissioner Hall indicated by email that he was not inclined to accept any additional evidence or documents, Ms. Pittman did submit materials to him. Deputy Commissioner Hall did not review the documents submitted by Ms. Pittman in preparing his decision in this matter, and instructed his legal assistant to seal the materials in an envelope and put them in the file.
At the hearing before the Full Commission, counsel for defendant Murphy Hinnant represented that his client had no objection to admitting into the record the documents provided to Deputy Commissioner Hall by Ms. Pittman. Thus, the Full Commission, in its discretion, hereby reopens the evidentiary record in this matter to admit the documents submitted to Deputy Commissioner Hall by Ms. Pittman after the close of the record.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between Donald Williams, Jr. and Murphy Hinnant, Inc.
3. Plaintiff's average weekly wage was $763.27.
 * * * * * * * * * * *
The following were marked and received in evidence at the August 26, 2005 hearing before the Deputy Commissioner as:
 EXHIBITS
1. Stipulated Exhibit No. 1 — Pretrial Agreement.
2. Stipulated Exhibit No. 2 — I.C. Forms and Discovery.
3. Stipulated Exhibit No. 3 — Medical Records.
4. Stipulated Exhibit No. 4 — Affidavit of Joanne McKinney.
5. Defendant-Employer's Exhibit No. 1 — Workers' compensation application.
6. Defendant-Employer's Exhibit No. 2 — Workers' compensation policy.
7. Defendant-Employer's Exhibit No. 3 — Premium payment schedule.
8. Defendant-Employer's Exhibit No. 4 — Endorsement of increased premium dated January, 24, 2003.
9. Defendant-Employer's Exhibit No. 5 — Declaration page dated 1/24/03.
10. Defendant-Employer's Exhibit No. 6 — Declaration page of policy renewal.
11. Defendant-Employer's Exhibit No. 7 — Endorsement of new policy.
12. Defendant-Employer's Exhibit No. 8 — Policy cancellation dated 3/13/03.
13. Defendant-Employer's Exhibit No. 9 — Declaration page dated 4/23/03.
14. Defendant-Employer's Exhibit No. 10 — Policy cancellation dated 5/4/03.
15. Defendant-Employer's Exhibit No. 11 — E-mail correspondence between Theresa Barnes and AIG.
16. Defendant-Employer's Exhibit No. 12 — E-mail from Theresa Barnes to AIG.
17. Defendant-Employer's Exhibit No. 13 — 4/30/04 e-mail from Theresa Barnes to AIG.
18. Defendant-Employer's Exhibit No. 14 — Articles of Incorporation.
Defendant-Employer's Exhibit No. 15 — Copy of check for insurance premium dated April 28, 2003.
19. Defendant-Employer's Exhibit No. 16 — Premium reconciliation.
20. Defendant-Employer's Exhibit No. 17 — Collection letter.
21. Defendant-Employer's Exhibit No. 18 — Declaration page form St. Paul Travelers Insurance Company.
22. State's Exhibit No. 1 — Employment Security Commission Records.
23. State's Exhibit No. 1 — Industrial Commission Records.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Defendant-Carrier AIG was served with a copy of the calendar by certified mail with return receipt requested. The Industrial Commission received the return receipt showing service was completed. AIG never contacted the Deputy Commissioner with any reason they could not attend the hearing in this matter. Neither AIG nor a representative of AIG appeared for the hearing of this matter.
2. At the time of the hearing, Plaintiff was 38 years old and a high school graduate. He had been employed as a truck driver with Defendant-Employer since November 2002.
3. On February 11, 2004 after fueling his truck in Greenburg, Indiana, Plaintiff slipped and fell and sustained injury to his back and right elbow. Plaintiff called Defendant-Employer and reported the accident. Plaintiff sought his first medical treatment on February 16, 2004 when he returned to Greenville, North Carolina. Plaintiff has not worked since returning to Greenville on February 16, 2004.
4. Plaintiff has remained under the ongoing care of Dr. Thomas Ellis. In addition, Plaintiff has been seen in consultation with Dr. Deanna Boyette, an orthopedic surgeon with Orthopedics East in Greenville. Dr. Ellis has indicated that Plaintiff is unable to perform gainful employment and has been so since his treatment began.
5. Plaintiff remains out of work and is currently receiving workers' compensation benefits from Defendant-Employer. There is a period of time from October 4, 2004 through February 8, 2005 that Plaintiff did not receive compensation.
6. Defendant-Employer has paid some of Plaintiff's medical bills; however, several medical providers have outstanding balances.
7. Defendant-Employer originally had a policy of workers' compensation coverage, issued by AIG (policy number 005678659) that provided coverage for the period of April 10, 2002 to April 10, 2003. In approximately January 2003, AIG submitted an endorsement showing an increase in premium of approximately $20,000.00 based upon an audit revealing an increase in payroll. This policy of insurance had been procured through the services of BB T Insurance Services of Lumberton. BB T Insurance was under contract with AIG to sell policies of insurance to BB T Insurance customers, including workers' compensation coverage. Pursuant to its contract with AIG, BB T Insurance was authorized to bind coverage. The contract of insurance provided by AIG to Defendant-Employer through the services of BB T Insurance was not an assigned risk policy. As such, BB T Insurance was the agent acting for and on behalf of the insurer, AIG, and not Defendant-Employer, as it relates to those communications and transactions that occurred during the procurement and handling of the workers' compensation coverage provided by AIG.
8. In response to the increased premium demanded by AIG in January, 2003, Angie Hinnant, the treasurer and person in charge of such matters as insurance for Defendant-Employer, made inquiry regarding a possible change in the class code assigned to the existing workers' compensation coverage provided by AIG. While not offering any assurances, Theresa Barnes, an agent with BB T Insurance, did submit to AIG a request for a class code change which, if accepted, was to generate approximately $20,000.00 in a premium credit that would then offset the additional premium that had been assessed as of January 2003. This request for a change in class code from trucking to livestock dealer was received and processed by AIG. Angie Hinnant, of Murphy Hinnant, Inc., was advised by Theresa Barnes, with BB T Insurance, not to pay the increased premium and to await the decision of AIG on the requested change in class code. Because Murphy Hinnant made no payment on the increased premium, the policy that was to be in effect until April 10, 2003 was cancelled by a notice of cancellation dated March 13, 2003.
9. Following this cancellation, Theresa Barnes, with BB T Insurance, had direct communications with Deborah Kusiak with AIG regarding this change of class code and application of a premium credit. During the course of these communications, Theresa Barnes continuously assured Angie Hinnant of Murphy Hinnant, Inc. that the discussions were ongoing, that no payment needed to be made, and that Murphy Hinnant would continue with its workers' compensation coverage.
10. Under policy number 003604806, the original workers' compensation coverage was renewed for the period of April 10, 2003 to April 10, 2004. A policy was actually issued showing coverage. This renewal policy did reflect a change in the class code as previously requested that resulted in a premium credit of approximately $23,100.00, but this premium credit had not been applied to the original policy as intended by Theresa Barnes with BB T Insurance. Because of this, Theresa Barnes made repeated requests of AIG to apply the code change to the original policy just as they did to the new, renewed policy.
11. As a result of an e-mail exchange in late April 2003 between Deborah Kusiak with AIG and Theresa Barnes with BB T Insurance, Angie Hinnant, at the direction of Theresa Barnes, sent a company check in the amount of $10,300.00 to AIG to be specifically applied to the new, renewed policy under policy number 003604806. At this point in time, the original policy had been cancelled and the coverage period had already expired. The demonstrated intent of Angie Hinnant was to make payment on the new, renewed policy in order that Defendant-Employer would have coverage for its employees.
12. The $10,300.00 payment made by Murphy Hinnant, Inc. was received by AIG, but was applied against the original, expired policy and not applied to the new, renewed policy as directed by Angie Hinnant. At that point in time, BB T Insurance was still attempting to have AIG apply the change in class code, which would have eliminated any outstanding billing under the original policy. Angie Hinnant was assured by Theresa Barnes, with BB T Insurance, that this payment would be sufficient to assure workers' compensation coverage until the other issues could be resolved. But, because AIG applied this payment against the original policy and not against the new, renewed policy, AIG sent a notice of cancellation of the new policy effective May 13, 2004. In light of this cancellation notice, Theresa Barnes continued to assure Angie Hinnant that there was workers' compensation coverage. Theresa Barnes continued her communications with AIG, and in particular Deborah Kusiak, asking for further consideration of the request for the premium credit.
13. The effort to cancel the workers' compensation provided under policy 003604806, issued by AIG for a coverage period of April 10, 2003 to April 10, 2004 was void and of no effect. AIG is estopped from denying this coverage in that its insured, Murphy Hinnant, Inc., directed a payment towards this premium in line with the normal business practice of installment payments. AIG's agent, BB T Insurance, assured Murphy Hinnant, Inc., of its continued coverage and even directed the payment that was made. The decision of AIG to apply the premium payment to the original, expired and cancelled policy, was contrary to the directive of the insured, and even contrary to the advice and recommendation of its own agent, BB T Insurance.
14. In line with its normal business practice and upon being notified of the injury, Angie Hinnant reported Plaintiff's injury to Theresa Barnes with BB T Insurance. As the agent for AIG, Teresa Barnes would typically report the injury to AIG. As the agent for AIG, notice of the accident to BB T Insurance is deemed notice to the carrier AIG. AIG is estopped from denying notice of this claim in light of the knowledge and notice to its agent BB T Insurance.
15. At all times relevant hereto, Defendant-Employer either had appropriate workers' compensation coverage or was attempting to secure workers' compensation coverage. There is no evidence to indicate that Defendant-Employer intentionally tried to circumvent the laws of the State of North Carolina in maintaining statutorily required workers' compensation coverage. While there was a substantial period of time following the expiration of the policy in April 2004 before a new policy was obtained as of March 31, 2005, Defendant-Employer was trying to secure coverage, but was being thwarted due to the fact that their history had been clouded through the reports of AIG that Defendant-Employer had cancelled insurance for failure to pay premiums. Such a cloud on its history was not through the direct actions of Defendant-Employer, but rather by the improper acts of AIG in attempting cancellation when a proper premium payment had been made.
16. Plaintiff's average weekly wage is $763.27, yielding a compensation rate of $508.87.
17. Defendant-Carrier AIG's refusal to appear and participate in this matter amounts to stubborn, unfounded litigiousness.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On February 11, 2004, Plaintiff sustained an injury by accident arising out of and in the course of his employment with Defendant-Employer when he slipped and fell injuring his back and elbow. N.C. Gen. Stat. § 97-2.
2. Plaintiff's average weekly wage is $763.27, yielding a compensation rate of $508.87. N.C. Gen. Stat. § 97-2.
3. AIG did provide workers' compensation coverage to Defendant-Employer on February 11, 2004 under policy number 003604806. AIG is estopped from denying coverage under this policy in that it billed for and did receive an appropriate premium payment specifically directed for application to this policy. As the carrier on the risk at the time of Plaintiff's injury, carrier shall be responsible under its coverage to Defendant-Employer for payment of all compensation and medical expenses due or to be paid on behalf of Plaintiff.
4. Plaintiff is entitled to have Defendant-Carrier AIG pay temporary total disability compensation from February 17, 2004 and continuing until further Order of the Commission at his compensation rate of $508.87 per week. N.C. Gen. Stat. § 97-29.
5. Plaintiff is entitled to have Defendant-Carrier AIG provide all medical treatment reasonably related to Plaintiff's compensable injuries to the extent it tends to effect a cure, give relief or lessen Plaintiff's period of disability. N.C. Gen. Stat. § § 97-25, 97-25.1.
6. In light of the testimony and evidence presented, and the good faith effort of Defendant-Employer to not only maintain its workers' compensation coverage, but to also secure workers' compensation coverage, it is the Full Commission's conclusion that Defendant-Employer has, to the extent of its ability, complied with the provisions of N.C. Gen. Stat. § 97-93.
7. Defendant-Carrier AIG's refusal to appear and participate in this matter amounts to stubborn, unfounded litigiousness. N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant-Carrier AIG shall pay Plaintiff temporary total disability benefits from February 17, 2004 and continuing until further order of the Commission, subject to an attorney's fee set out below.
2. Defendant-Carrier AIG shall pay for all medical expenses incurred or to be incurred by Plaintiff that are reasonably related to his compensable injury to the extent they are reasonably designed to effect a cure, provide relief or lessen the period of disability.
3. A reasonable attorney's fee of 25% of the compensation awarded to Plaintiff in paragraph 1 above is hereby approved to be deducted from the sums due Plaintiff and paid directly to Plaintiff's counsel. Thereafter, Defendant-Carrier AIG shall pay every fourth payment directly to Plaintiff's counsel.
4. Defendant-Carrier AIG shall reimburse Defendant-Employer for weekly compensation paid to Plaintiff and medical expenses paid on behalf of Plaintiff.
5. Pursuant to N.C. Gen. Stat. § 97-88.1, Defendant-Carrier AIG is hereby ordered to reimburse attorney's fees incurred by Defendant-Employer in that the actions of the carrier AIG were unwarranted and resulted in this matter being defended without reasonable grounds due to AIG's refusal to even appear at the properly noticed hearing of this matter.
6. No penalties are assessed in this matter.
7. Defendant-Carrier AIG shall pay the costs.
This 28th day of September 2006.
S/_______________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_______________________ THOMAS J. BOLCH COMMISSIONER
 S/_______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER